# CHARLESTOWN.

## RODERICK v. THE RAILROAD COMPANY.

August 22, 1873,

1873.
August Term.

1. When the plaintiff files an amended declaration, which is complete in itself, and does not refer to, or in any manner adopt the former as part of the same, and to which amended declaration defendant replies and issue is joined thereon, the former shall be considered as withdrawn or abandoned.

2. A plea filed to the first declaration, but not withdrawn, will be regarded as filed to the second declaration.

3. A new trial will not be granted after verdict, because the amount of damages assessed by the verdict exceeds the amount claimed in the writ, but not the amount laid in the declaration.

4. A new trial will be granted on the affidavit of a party, or of some other person, on the ground of newly discovered testimony, when the affiant shows that he has conversed with the witnesses, and details the testimony which they will give, and the court sees that it is not cumulative, and if before a jury would produce a different verdict; and where such testimony was unknown to the plaintiff and he had used due and proper diligence to procure it.

5. A common carrier will not be liable for injury to a horse, occasioned by the improper or unwarrantable interference of the plaintiff or his agent, with the management of the car, by the servants or employees of the company.

This was an appeal, by the plaintiff below, from the judgment of the circuit court of Jefferson county, rendered at the August term, 1868, of said court, wherein Hezekiah Roderick, was plaintiff, and the Baltimore and Ohio Railroad Company, defendant. The Hon. Ephraim

B. Hall, judge of said circuit court, as organized under the Constitution of 1863, presided at the trial below.

The facts are sufficiently stated in the opinion of the Court, delivered by Paull, Judge.

*Charles J. Faulkner*, for appellant.

*George H. Lee*, for appellee.

PAULL, Judge :

In 1865, an action was instituted by the plaintiff, Hezekiah Roderick, against the defendant, in the circuit court of Jefferson county, for injuries received by a horse of the plaintiff, while in the course of transportation from Harper's Ferry to Baltimore. A declaration in case was filed, and a common order taken and confirmed. At the April term of the court, leave was given to the plaintiff to file an amended declaration, during the term. No record or entry, made by the clerk, indicates that this amended declaration was filed; but a declaration in assumpsit appears in the printed record, and from affidavits found therein, it appears that this declaration was filed ; and from a manuscript record, it appears that the plea of non-assumpsit was filed to this declaration, and plaintiff replied generally and issue was joined thereon. This amended declaration is complete in itself, and does not purport to be filed merely as an additional count to the former ; nor is the former in any way adopted by, or made part of, the same ; and the amended declaration is, as before stated, in assumpsit, while the former is in case. In this state of the pleadings, the former declaration may be regarded as withdrawn or abandoned. This last, or amended, declaration claims damages to the amount of $1,900. On the pleadings and issue thus made, a jury was impanelled and a trial had, at the October term, 1866, in which a verdict was rendered for the plaintiff for $1,500—and judgment rendered. At the same term, the defendant moved the court to set aside the verdict and judgment, on the grounds set forth

in the record, and at the April term of the court, 1867, this was done, and a new trial awarded to the defendant; and, to this ruling of the court, the plaintiff excepted.

At the June term of the court, 1867, leave was given to the plaintiff to file, within forty days, an amended declaration. The record does not indicate, from any entry of the clerk, or from any other evidence, that this amended declaration was ever filed; or, if filed, does it appear that any other plea was filed in the cause, other than the plea of non-assumpsit, which had been filed to the second declaration.

At the April term, 1868, a jury was sworn, to try the issue joined between the parties, and rendered a verdict for the plaintiff for $1,200. Whether this issue was made upon the first, or second, amended declaration, it is not necessary, or perhaps proper, in view of the subsequent proceedings and the opinion reached by this Court, now to determine. If it was the issue made under the pleadings in the former trial, there was no objection to it. If the second amended declaration was filed, the plea of non-assumpsit not being withdrawn, would stand as a plea to it; *Eppes Ex'or v. Demoville, Adm'r,* 2 Call, 22. In either case the parties were at issue on their pleadings; and even if the plea of non-assumpsit to the last declaration was informal, it is too late to take advantage of it after verdict; *Hunnicutt v. Carsley,* 1 H. & M., 153.

At the same term, (April, 1868,) a motion was made, by the defendant, to set aside this verdict and grant a new trial, for the reasons, or on the grounds, set forth in the record: *First,* because said verdict was contrary to the evidence; *Second,* because said verdict was contrary to law; *Third,* because said verdict was without evidence to support the same; *Fourth,* because said verdict was contrary to the instructions of the court; *Fifth,* because of newly discovered evidence.

At the August term, 1868, this motion was granted, and a new trial awarded; and, to this order of the Court,

1873.
August Term.

Roderick
v.
Railroad Co.

the plaintiff excepted. The bill of exceptions sets forth the affidavits of A. B. Wood, in regard to newly discovered testimony, and the facts and evidence produced upon the trial.

On the twenty-fourth day of July, 1869, notice was given and service of the same accepted by the defendant's counsel, that an appeal had been taken from an order of the circuit court granting a new trial in this cause, and on the same day a bond is filed by the plaintiff, the condition of which recites that the plaintiff has sued out an appeal "from an order of the circuit court of Jefferson county granting a new trial and setting aside the verdict of the jury" in this cause.

It is obvious that the appeal has not been taken from both orders of the court granting the two new trials, but from one only; and the plaintiff is entitled to have his appeal but from one order considered; from which order the appeal was taken is not indicated in any manner, and it is but natural and proper to infer, and to hold, that the appeal is from the order granting the last new trial, as with its result the plaintiff is satisfied, as well as with the former, and equally objected to the court interfering with the verdict. At all events, there can be no ground of complaint, as the plaintiff himself has failed to indicate from which order his appeal was designed to be taken.

Was there error in the court below in granting the last new trial, is the only question now remaining for determination. In support of the action of the court, it is suggested by the defendant's counsel, that as the amount of damages found by the verdict of the jury exceeds the amount claimed in the plaintiff's writ, that the variance is fatal, and is a sufficient ground for setting aside the verdict. This position, however, does not seem to be correct, when the *amount claimed in the declaration is sufficiently large to cover the amount found by the verdict*, and this is true in the present case; if the

8

judgment was for more damages than are stated in the declaration, or the writ, it would be erroneous, but not when it is for less. *Moss v. Moss' Admr.*, 4 H. and M., 309, 310; 2 Wash. 203; 2 Tucker's Com. 314. In these books and cases, the doctrine would seem to be settled.

There are other grounds, however, for the order granting this new trial, which we proceed to notice. The first is that of newly discovered testimony. One of the questions arising upon the trial was the value of the plaintiff's horse, which had been injured. The affidavits of A. B. Wood, an agent for the defendant, are produced, in which he affirms that since the trial he had conversed with two different persons, one of whom had told him that the horse was not worth $100 at the time of this shipment; that he knew the horse, &c., and that he was willing to testify to these facts; that he was informed by the other person that said horse was considered nearly, or quite, valueless; that he had been badly burned whilst on a train of cars in transportation from the south, &c.; that affiant had made diligent search for these facts before the trial; that he had diligently endeavored to find some testimony as to the value of the horse before the trial, but had been unable to do so, as the horse was almost unknown in the county. Such is the testimony of A. B. Wood, in his affidavits. Regarding the case of *Nuckols' Admr. v. Jones*, 8 Gratt. 267, as furnishing a proper rule upon this subject, and admitting that the courts should grant new trials on this ground with great care and caution, I think this case is fairly brought within the scope of the rule. The defendant asking the exercise of this power on the part of the court, shows ignorance of the existence of the evidence; that it was guilty of no negligence, and produces the affidavit of a party who had conversed with the witness whose evidence it was proposed to take; we think, moreover, that the new evidence, if before the jury, would have resulted in a different or modified, verdict. Moreover, the evidence is not cumulative, as the record

discloses that no evidence whatever, on this question of value, was before the jury, on the part of the defendant. We think, therefore, that the circumstances here set forth fulfil the requirements of the rule. The affidavits of the parties, whose testimony it was proposed to take, appear in the record, and indicate that their testimony would not have been given, as stated in the affidavit of Wood, the agent of the Company : But these affidavits were not before the court below, when the order granting the new trial was made, and cannot, therefore, be considered by this court.

Another ground on which this new trial was asked, is because the verdict was contrary to the law and evidence. The facts and evidence are found in the supplemental record in this cause. The testimony of five witnesses, (excluding the plaintiff's own,) is produced to sustain the issue on the part of the plaintiff. Hobart T. Lewis, the agent of the plaintiff in the shipping of this horse, is the only witness, on either side, who testifies as to the way the horse came to be injured, and his testimony on that point, is the following : "The horse fell out of the car from the door being open, about one mile this side of Mount Airy:" This is the whole testimony in this cause upon this point. The door of the car being open was the sole cause, or occasion of this horse being injured. It is true this witness Lewis objected to his being placed in what he calls a close house car, his only objection being that "it was too low, and the horse would likely strike his head." It may be here remarked that it appears from the testimony, that the Company did not know at the time this horse was taken on the car and during the course of transportation, that any other person than Lewis himself, was the owner of the horse. This same objection was made by the plaintiff who was present at the time, and who testifies as follows: "The horse was put in a low house car: I objected to the car, and told agent that it was not fit to put a horse in :" On the other hand is the testimony of four witnesses pro-

duced by the Company, each of whom proves that he was in the Company's employment at the time of shipping this horse ; that it was their duty, in one capacity or another, to give attention to this shipment, and that the car was sound and in good condition, and suitable for the purpose for which it was used.    There is no complaint in any quarter that there was not sufficient air, or ventilation ;  the accident or injury was occasioned solely by the door of the car being left open ;  the horse broke his halter and fell out.    In the other end of the same car were two other horses belonging to different persons.

*Was, then, the door of the car left open by any fault, misconduct or negligence of the Company ?*

Perry Price, one of the Company's witness, states that he was dispatcher of trains at Harpers Ferry when this horse was shipped and remembers the fact ; "that it was his duty to see that the car doors were closed before the train started, and after the horse was put into the car ; that he went to the door to close it; that Mr. Hobart Lewis, who shipped the horse, was in the car, and would not let him shut the door ; and said that he would take care of the horse himself, as he was of too much value to be shut up without some one to take care of him ; that witness would have closed the door, but for Lewis refusing and saying that he would take care of the horse; when the car door is closed and fastened it cannot be opened from the inside."    A. B. Wood testifies, that at this time he was dispatcher of trains at Sandy Hook yard ; that he also offered to close and fasten the door of this car, but was prevented by Lewis who was in the car. Thomas Michel was the conductor of this train ; and he testifies that he went to close and fasten the door of this car ; that the man in charge of the horse, who had a shipper's papers, refused to allow him to close the door, and wanted to take care of the horse himself ; that he would have closed the door but for that refusal and that Lewis was in the car."    The testimony of these three witnesses, as to these material facts, as to the closing of

the car-door, is wholly unimpeached and uncontradicted in any way, even by Hobart Lewis himself. Upon this testimony, it is manifest beyond all doubt or controversy, that the injury to this horse was occasioned by the improper and unwarrantable interference of the plaintiff or his agent in the management of the car, by means of which the accident occurred; in other words it was occasioned directly by the fault or misconduct of the plaintiff or his agent, whom he had put in charge of his animal, and of his transportation. Thus the acts of the plaintiff not merely contributed to, but actually occasioned, the accident which caused the injury of which the plaintiff complains, and for which, therefore, he is not entitled to recover. This position is in no conflict with the case of *Hannibal Railroad v. Swift,* 12 Wall. 262, cited by plaintiff's counsel, in which it was *held,* " It is not a ground for limiting the responsibility of a common carrier, where no interference is attempted with his control of the property carried, that the owner of the property accompanied it, and keeps watch for its safety." The Court say, in delivering the opinion: " The control and management of the car, or of the train, by the servants and employees of the company, were not impeded or interfered with;" and this was the ground of the decision, so far as that point is concerned. Here the facts are different.

Another point upon the law and testimony in this case might be worthy of consideration. The plaintiff takes the evidence of four witnesses, (excluding his own) as to the value of this horse: one fixes his value, at the time of shipping him, at $2,000; one at $1,200 or $1,500; one at $3,000, and one at $2,500; the plaintiff himself fixing it also at $2,500; but three out of these four witnesses, testify as follows, to-wit: John E. Irwin, " he was of no value except as a race horse, and would be of no value to any one, except for winning money by betting on his speed in racing; he might be a riding horse, I don't know as to that." John Roderick (son of the plaintiff) testifies, " the horse was a fast race horse; would be of

no value except to win money at racing." James Gibson testifies, " he was a very fast racer; don't think the horse was of much value except that the owner might make money by betting on him." By this testimony, the chief, if not the exclusive, value, of this horse is made to consist, not in his ability to render useful service in the ordinary and lawful employments of men, but in the ability which he furnished to his owner, to make money by betting on his speed in the race.

To run a horse race on the public roads of this State, and betting on the same, are forbidden by its statutes and punished; such practices, on the public roads, at least, are made unlawful, regarded as dangerous to the public safety, and demoralizing. This may also be true of the practice under other circumstances; and its evil is apparent in the fact disclosed in the evidence, that this horse, at the time of the accident, was on his way to Baltimore to run a race, on which his owner had bet $600; and he was most cruelly compelled, in his crippled, wounded and suffering condition, to attempt to run the race, and fell at the end of a hundred yards. Does the law allow compensation for the loss of any property, which can only be used by its owner, as the testimony indicates, for the purpose of making money by the demoralizing practice of racing and betting? This horse was doubtless of some use for other purposes, but this large verdict was manifestly given in view of his racing qualities, upon the testimony before cited. But waiving any further pursuit of this enquiry, the judgment of the circuit court, for the other reasons stated, granting a new trial, made at the August term, 1868, is affirmed, with costs and damages to the appellee.

Haymond, President, and Hoffman, Judge, concurred in the first three points stated in the syllabus. Hoffman did not concur in the fourth point, nor in all the reasoning in support of the fifth point. Moore, Judge, absent.

JUDGMENT AFFIRMED.