# CHARLESTON.

ROBERTS, *who sues &c.* v. UNITED FUEL GAS CO.

Submitted May 13, 1919.    Decided May 27, 1919.

1. PLEADING—*Demurrer to Amended Declaration—Effect—New Cause of Action.*

   A demurrer to an amended declaration, which makes no reference to the original, challenges only the sufficiency of the pleading and does not raise the question whether the amendment introduces a new cause of action, which can be raised only by objection of the filing or motion to strike. (p. 370).

2. TRIAL—*Improper Remarks of Counsel—Instruction to Disregard Remarks.*

   Improper remarks by counsel during the trial and in the presence of the jury are not cause for reversal if the jury were properly instructed to disregard them, and the court is unable to see that substantial prejudice resulted. (p. 371).

3. COMMERCE—*Master and Servant—Pipe Line—Workmen's Compensation Act—Work Subject to Provisions of Act—Liability—Defenses.*

   Excavation of a ditch by an interstate pipe line company, preparatory to laying a gas pipe, parallel to one of its existing main lines and to be connected therewith, for the purpose of increasing its carrying capacity, is not part of its commercial business, but is work clearly separable and distinguishable therefrom, and in the performance thereof such company is subject, unconditionally, to the provisions of the Workmen's Compensation Act, and, if in default, is liable for injury to its servants employed in such work, caused by the negligence of a fellow servant, and is denied the right of the common law defenses of fellow servant, assumption of risk and contributory negligence. (p. 373).

4. APPEAL AND ERROR—*Harmless Error—Submission of Issues.*

   An error in submitting a pure question of law to the jury is rendered harmless by a correct decision thereof by them. (p. 373).

5. DAMAGES—*Personal Injury—Excessive Damages.*

   Twenty-five hundred dollars damages assessed by the jury for the loss of an eye is not excessive. (p. 376).

Error to Circuit Court, Roane County.

Action by Troy Roberts, by next friend, against the United

Fuel Gas Company.   Judgment for plaintiff, and defendant brings error.                                      *Affirmed.*

R. G. *Altizer,* C. C. *Douthitt* and *Pendleton, Mathews & Bell,* for plaintiff in error.

Thos. P. *Ryan* and *Chas. E. Hogg,* for defendant in error.

WILLIAMS, JUDGE:

Plaintiff, a minor nineteen years of age suing by next friend for damages on account of a personal injury, caused by the alleged negligence of a fellow servant, recovered judgment against the defendant by whom he was employed as a common laborer, and it is prosecuting this writ of error.

Defendant is a corporation engaged in producing natural gas and transporting it through pipe lines to its customers both within and without the state and is, therefore, engaged in both intrastate and interstate commerce. It does not maintain separate pipe lines for the two kinds of commerce, but transports the gas for both domestic and foreign consumption through the same lines to certain points where so much as is intended for use within the state is carried from the main line, by means of lateral lines, to the places of consumption. Its commercial business is, therefore, so mingled as not to be clearly distinguishable, the domestic from the foreign. It employed plaintiff about the digging of a ditch about two and a half or three miles in length, preparatory to laying a pipe line from its compressor station at Clarence, to connect with the main line leading from that point to Ravenswood on the Ohio River. This new line was parallel to the main line already existing and was intended to increase defendant's carrying capacity between the same points. The main line supplied gas to the towns of Ripley and Ravenswood in West Virginia, and what was not consumed by these towns was turned over at Ravenswood to the Ohio Fuel Supply Company for consumption in Ohio, and was measured in the line as it flowed through the station. Defendant ceased to pay its quota or assessment into the Workmen's Compensation Fund in April, 1915, and was in default at the time of plaintiff's injury which occurred on the 6th of the following August.

Plaintiff's employment required him to gather the tools used by the workmen in the ditch when they became dull, carry them to the blacksmith shop for repair and redistribute them along the ditch after they were sharpened. On the day of his injury he took some tools to the shop and was watching the blacksmith and his helper while they were sharpening a drill. They were about to cut off the sharp corners of a drill with a cold chisel and sledge hammer, the drill and chisel being held in place on the anvil by the blacksmith and his helper striking the chisel with the hammer, and the blacksmith told plaintiff to get back out of the way, that a piece of steel might fly off and strike him in the eye. Plaintiff says he immediately started to get out of the way and, before he had time to do so, the helper struck the chisel an unusually hard blow causing a small bit of hot steel to fly off from the drill and strike him in the eye, lascerating the ball so severely that it became necessary for him to go to the hospital and have his eye removed, which he did.

The first error defendant assigns is the overruling of its demurrer to plaintiff's first and second amended declarations. Its counsel insist that the original declaration avers plaintiff's injury was received while he was working on a pipe which was used in both interstate and intrastate commerce, and because the two were inseparable, stated no cause of action, defendant in such case not being liable for an injury caused by the negligence of a fellow servant, citing *Barnett* v. *Coal & Coke Ry. Co.*, 81 W. Va. 251, and *Suttle* v. *Hope Natural Gas Co.*, 82 W. Va. 729, 97 S. E. 429, whereas, in his two amended declarations he averred his injury was received while he was engaged in work for the defendant, which was wholly intrastate, thus, as counsel insist, departing from the original cause of action, citing *Findley* v. *Coal & Coke Ry. Co.*, 76 W. Va. 747. Each of the amended declarations, which are not materially different in substance, states a good cause of action, and the demurrers thereto were properly overruled. Objection on the ground that the amendment constituted a departure from the original cause of action, or because it introduced a new and different cause of action, was not made, and the question does

not arise on demurrer. 31 Cyc. 463. Where plaintiff files an amended declaration making no reference to the original, the original is considered as abandoned. *Bartley* v. *Western Maryland Ry. Co.,* 81 W. Va. 795; *Shafer* v. *Security Trust Co.,* 82 W. Va. 618, 97 S. E. 290; and *Roderick* v. *Railway Co.,* 7 W. Va. 54. Hence, the demurrer goes only to the sufficiency of the averments in the amended declaration. *Railway Co.* v. *Sutherland,* 105 Va. 545. The question should be raised by objecting to the filing of the amended declaration or by motion to exclude it. Authorities *supra.* But no objection was here made. The court had overruled the demurrer to the original declaration and permitted plaintiff, on his own motion, to amend, as he had a right to do, and the cause was remanded to rules for that purpose. The amended declaration incorporates no part of the original nor makes any reference to it, hence a demurrer could not raise the question. However, there is no departure, the amendment preserves the identity of the original cause of action. It shows plaintiff was injured while engaged in the same service, in the same manner and on the same occasion as alleged in the original declaration, the only difference being that the amended declaration states with greater particularity the character of the work defendant was then doing and the nature of plaintiff's employment therein; and in both the original and amended declarations the cause of action averred, arises under the laws of the State of West Virginia. Hence, the case is unlike *Findley* v. *Coal & Coke Ry. Co., supra,* where the plaintiff brought his action under the state law, and, after the evidence introduced at the trial had so far developed the facts as to render it apparent that his right of action was determinable according to the Federal Employer's Liability Act, sought to amend his declaration in order to make it conform to the requirements of that act, and the amendment stated a different ground or basis of action and was, therefore, an averment of an entirely new cause of action. But here there is no such departure, and the amendment was proper.

The next complaint is, that the court improperly overruled

defendant's motion to discharge the jury from further considering the case, on account of certain improper remarks made in their presence and hearing by one of counsel for plaintiff, after they had been impaneled and sworn, which, it is claimed, were evidently intended to prejudice the minds of the jury against defendant and prevent a fair and impartial verdict. In the progress of the trial Thomas P. Ryan, one of the plaintiff's counsel, arose and in the presence and hearing of the jury said:

"I want to call the court's attention to the fact that I am just informed that an employee of the United Fuel Gas Company, the defendant in this suit, has a list of jurors at this time, and has been insisting on their going to his home, and wanting them to say what they think of the United Fuel Gas Company, and what they think of the case now on trial; and this is not all, there are other things being done that are improper."

Counsel insist that such statement was extremely prejudicial, and was made for the purpose of inducing the jury to believe that defendant, through its agents, was endeavoring in some improper manner to influence them to render a verdict in its favor, and thereby to cause a revulsion in their minds from defendant and render them less capable of considering the case fairly and impartially. We do not hesitate to express our disapproval of such conduct on the part of counsel. It was highly improper and unprofessional, and, so far as the record discloses, was wholly without justification or excuse. But it is not just that litigants should be made to suffer for the indecorous remarks and unprofessional conduct of their counsel, and unless the court can see that the jury were in fact improperly swayed or influenced thereby, it is not cause for reversal. The trial court, by a proper instruction to the jury told them to disregard said remarks and not to allow their minds to be influenced thereby, but to decide the case impartially, solely according to the evidence, and did all in its power to correct the wrong. *State* v. *Huff*, 80 W. Va. 468; *State* v. *Alie*, 82 W. Va. 601, 96 S. E. 1011; and 4 Encyc. L. & P., 451.

The next complaint is, that the court erroneously, gave plaintiff's instructions Nos. 1 and 2 to the jury. In substance and legal effect they are the same, the only difference being in phraseology. The first informed the jury that, if they believed from the evidence that at the time of plaintiff's injury he was employed by defendant, and it was then engaged in both interstate and intrastate commerce and that the work in which plaintiff was engaged was done in the State of West Virginia while defendant was engaged in intrastate commerce therein, and such intrastate commerce was clearly separable and distinguishable from the interstate work in which defendant was also engaged, then they were informed that, as to the work in which plaintiff was then engaged, defendant was subject to the Workmen's Compensation Act and, not having availed itself of the provisions thereof, could not rely upon the defenses of contributory negligence, assumption of risk or the negligence of a fellow servant.

Because there was no conflict in the evidence respecting the character of business in which defendant was engaged, or in the character of work in which plaintiff was employed at the time of his injury, counsel insist that the question whether defendant was subject to the Workmen's Compensation Act was one of law for the court and was, therefore, erroneously submitted to the jury. Generally it is error to submit unmixed questions of law to the jury for their decision, but if the court does so, and the jury happens to decide them correctly, a party is not thereby prejudiced and cannot complain. *Runnion* v. *Morrison,* 71 W. Va. 254.

Defendant's default being admitted, and the other facts submitted to the jury by the instructions being proven and not denied, the real question presented was one of unmixed law for the court, which is this: Was the work of digging the ditch preparatory to laying a new pipe line which was to become, when completed, a part of defendant's transportation system, a work that is clearly separable and distinguishable from its interstate work? The question is answered by previous decisions of this court. *Suttle* v. *Hope Natural Gas Co.,*

*supra; Barnett* v. *Coal & Coke Ry. Co., supra;* and *McKee, Adm'r.* v. *Ohio Valley Electric Ry. Co.,* 78 W. Va. 131. The work of excavating the ditch was purely construction work, within the State and was clearly separable and distinguishable from defendant's commercial business. The pipe line to be laid in the ditch was not part of defendant's means or appliance for carrying on either intrastate or interstate commerce, nor could it become such until the pipe was laid. This is altogether unlike a case where an employe is injured while engaged in repairing an existing means or appliance already devoted to a commercial purpose, as, for instance, the work of repairing an existing railroad track, bridge or depot, which is already devoted to commerce. In the McKee Case, plaintiff's intestate was killed by the falling in of the earth upon him while he was making an excavation for the foundation of an abuttment for a new bridge, which was intended to take the place of an old one then in use, and we there held the work he was doing was separate and distinct from commerce. In the Suttle Case, plaintiff's intestate was killed while assisting in the erection of a derrick over a gas well, preparatory to cleaning out the well in order to accelerate the flow of gas which was intended for both intrastate and interstate commerce, and it was held that such work was not connected with commerce. But in the Barnett Case plaintiff's intestate was employed in transportation work, and the intrastate and interstate features of it were not clearly separable, and because of the provisions of §52 of the Workmen's Compensation Act, relating to employes engaged in both intrastate and interstate work, making as to them a limited application of the provisions and penalties of the act, it was held that the act did not apply in the particular instance. But that case is clearly distinguishable from the present one. Here the work in which plaintiff was employed is wholly separable and distinguishable from defendant's interstate business, and, in such case, the provisions of the act are applicable to defendant. Section 52 expressly says the act shall apply to an employer engaged in interstate commerce "to the extent that his mutual connection with the work in this state is clearly separable and dis-

tinguishable from his interstate work", and to that extent the act applies unconditionally.

In construing the Federal Employer's Liability Act to determine whether an employe was, at the time of his injury, engaged in interstate transportation, the Supreme Court of the United States holds that the test is: "Was the employe at the time of the injury engaged in transportation, or in work so closely related to it as to be practically a part of it." *Shanks* v. *Delaware &c R. R. Co.*, 239 U. S. 556. *New York Cent. R. R. Co.* v. *White*, 243 U. S. 188. In the Shanks Case it appears that he was employed in a railroad machine shop, and his work generally consisted in repairing certain parts of locomotives which were used in both intrastate and interstate transportation, but on the day of his injury he was solely engaged in taking down and putting into a new position an overhead shaft, one of the shop fixtures, and it was held he was not then engaged in interstate transportation within the meaning of the act. In the White Case, plaintiff's intestate was a night-watchman in the employ of the railroad company, and his duty was to guard tools and materials intended for use in the construction of a new station and new tracks upon a line of interstate railroad. He received an injury which resulted in his death, while performing his prescribed duties, and the court held that although the fact was admitted that the new station and tracks were designed for use in interstate commerce when finished, it did not bring the case within the Federal Employer's Liability Act. This case is very similar to the one under consideration. The differnce between the character of the construction work in the two cases does not differentiate them. In *Bravis* v. *Chicago &c. R. R. Co.*, 217 Fed. 234, a case decided by the Circuit Court of Appeals, the rule is thus stated: "An employe engaged in the construction of a bridge, 600 feet distant from a railroad, on a cut-off more than a mile in length, which had never been provided with rails or used as a railroad, is not employed in interstate commerce, although his employer is so engaged and intends to use the cut-off therein when completed."

The next point on which counsel rely is the alleged error in

refusing defendant's peremptory instruction. It is predicated on the assumption that there is not sufficient evidence to prove actionable negligence. The negligence on which plaintiff relies is the negligence of a fellow servant, and the evidence respecting it is conflicting, but sufficient to support the verdict. By the Workmen's Compensation Act an employer who is in default is rendered liable for the neglect of his servants or agents, and is denied the defenses of fellow-servants, contributory negligence and assumption of risk. In answer to interrogatories propounded to the jury, on motion of the defendant, the jury found that, although the blacksmith had warned plaintiff of his danger, he was not given time to get out of the the way, and received his injury while attempting to obey the warning.

It is useless to cite authorities for the proposition that $2,500 is not an excessive verdict for the loss of an eye.

Our conclusion is to affirm the judgment.

*Affirmed*