# CHARLESTON.

OTHA A. MILLER v. UNITED FUEL GAS COMPANY.

Submitted February 22, 1921.   Decided March 1, 1921.

1. MASTER AND SERVANT—*Compensation Act Applies Unconditionally Only to Employees in Intrastate Commerce.*

With respect to an employer engaged in both interstate and intrastate commerce, section 52 of the Workmen's Compensation Act (chapter 15P, Code of 1918) applies the provisions

of the act unconditionally only to those of his employees whose work is wholly intrastate and clearly separable and distinguishable from work in interstate commerce.    (p. 87).

2.  SAME—*Compensation Act Must be Accepted by Employer and Employees Engaged in Interstate and Intrastate Commerce.*

    But where the work done within the state is so closely related to the interstate business of the employer that it cannot clearly be distinguished and separated from it, the act is made to apply only upon the condition that the employer and such employees voluntarily accept its provisions by filing with the commissioner written acceptances approved by him. (p. 87).

3.  SAME—*Employer Engaged in Interstate and Intrastate Business Not Deprived of Common-Law Defenses in Absence of Acceptance of Compensation Act.*

    Where the employer and his employees have not so elected to submit to the act, the former is not deprived of his common law defenses.    (p. 87).

4.  COMMERCE—MASTER AND SERVANT—*Inspection of Interstate Pipe Line for Gas Held "Interstate Commerce," Requiring Mutual Acceptance of Workmen's Compensation Act.*

    An employee of an interstate carrier of gas, inspecting within the state an integral part of its pipe line transportation system, through which gas continuously passes destined for indiscriminate interstate and intrastate use, in search of a leak known to exist, is engaged in work so closely related to interstate commerce as to be part of it; and, in the absence of a mutual election to submit to the Workmen's Compensation Act, the employer is not deprived of his common law defenses at the suit of the employee for injuries sustained by him while engaged in such inspection and repair work.    (p. 87).

5.  MASTER AND SERVANT—*Employment in Interstate Commerce Held Question for Court.*

    Where in such case there is no conflict in the evidence respecting the character of defendant's business and the nature of plaintiff's employment, the question whether the latter was or was not so closely identified with interstate commerce as to be part of it, is for the court, not the jury, to determine. (p. 89).

6.  TRIAL—*Instruction Including Element of Permanency of Injury and Probability of Future Loss Not Sustained by Evidence Erroneous.*

    In the absence of evidence reasonably tending to establish

permanent injury of the plaintiff, or the probability of future pecuniary loss resulting therefrom, an instruction including such elements among those proper to be considered by the jury in determining its verdict, is erroneous. (p. 89).

7. MASTER AND SERVANT—*Employer Failing to Accept Compensation Act Not Liable for Injuries Not Caused by His Negligence.*

Though an employer within the terms of the Workmen's Compensation Act fails to avail himself of the benefit of the statute, he is not liable for an injury sustained by an employee in the course of his employment, in the absence of negligence on the part of the former which is the proximate cause of the injury. (p. 90).

8. NEW TRIAL—*Verdict Based on Conjecture Should be Set Aside.*

In an action for tort, the plaintiff bears the burden of proof, and a verdict for him, based upon evidence which affords a mere conjecture that liability exists, and leaves the minds of the jurors in equipoise and reasonable doubt, should be set aside upon proper motion. The evidence must generate an actual, rational belief in the existence of the disputed fact. (p. 91).

9. MASTER AND SERVANT—*Reasonable Care to Furnish Reasonably Safe Place for Work Sufficient.*

An employer has performed his duty to provide a reasonably safe place within or upon which his employees may work, when he has exercised reasonable care and diligence in that regard. (p. 91).

Error to Circuit Court, Roane County.

Proceedings by Otha A. Miller against the United Fuel Gas Company. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*R. G. Altizer, C. C. Douthitt* and *Pendelton, Mathews & Bell,* for plaintiff in error.

*Thos. P. Ryan* and *Chas. E. Hogg,* for defendant in error.

LYNCH, JUDGE:

The purpose of this writ is to review a judgment for plaintiff entered upon a verdict in an action to recover damages for personal injuries resulting from the bursting of defendant's gas pipe line on July 29, 1916. At the time of the accident plaintiff and a fellow employee were engaged in search-

ing for a leak which had developed in the line, to which duty they had been assigned by defendant's superintendent.

The line in question was a gathering or feed line, four inches in diameter, designed to collect and confine gas from numerous wells in the vicinity and transport it in succession to another 4-inch line, thence through an 8 or 10 inch line to a compressor station, and by an 18-inch main trunk line to Ravenswood on the Ohio River, where the gas is metered, sold and delivered to the Ohio Fuel Supply Company, by whom it is transported across the river and sold and distributed to patrons of the latter in Ohio. A minor portion of the gas so gathered and transported is sold en route to various consumers in this state, but the remainder is carried in the line without material break across the state line into Ohio, thereby becoming a commodity of interstate commerce. The two portions, however, that sold within the state and that without, are commingled in the one transportation system and no attempt is made to separate them. We have hitherto had occasion to refer to the combined interstate and intrastate character of this portion of defendant's business, and therefore it is unnecessary to enter into further discussion of it. *Roberts* v. *United Fuel Gas Co.*, 84 W. Va. 368, 99 S. E. 549; *United Fuel Gas Co.* v. *Hallanan*, 87 W. Va. 396, 105 S. E. 506, 516-517.

Plaintiff and W. B. Hughes had ascertained the approximate location of the leak and were engaged in digging along the side of the line, which was buried about eighteen inches beneath the surface of the ground, in order to determine the exact source of the leakage and repair the line to stop the flow. Hughes was digging with a pick and plaintiff was removing the loosened dirt with a shovel, when, from some unaccountable and unexplained cause, the pipe burst, throwing both of them a considerable distance, filling their eyes with dirt, mud and gravel, and dazing them by the force of the explosion. A physician hastily summoned removed the dirt and other substance from their eyes as best he could and rendered other necessary assistance. Plaintiff was removed to his home where his eyes were kept bandaged for four days. After two weeks he returned to his work and remained with

the company for more than a year, usually engaged in performing the same character of work as before the injury. Since then he has been and now is employed by the Atlantic Refining Company as foreman in charge of its line repair' work at an increased daily compensation.

The declaration and its three counts charge defendant with negligence in a three-fold aspect: (1) In failing to keep its pipe line in a reasonably safe condition and state of repair, and in permitting too great a volume of gas to remain in the pipe at high pressure; (2) in failing to shut off the gas in the line before directing plaintiff to locate the leak; (3) in failing to lay a line sufficiently strong to carry with reasonable safety the volume of gas transported through it. The declaration also averred the failure of the defendant to comply with the requirements of the Workmen's Compensation Act by paying into the compensation fund the premiums required by law.

In addition to its demurrer to the declaration and plea of not guilty, defendant tendered and the court permitted it to file three special pleas denying that it was subject to the Workmen's Compensation Act of this state and setting up the common law defenses of contributory negligence, assumption of risk, and fellow servancy.

Plaintiff's instructions Nos. 1 and 2, given, and defendant's instruction No. 2, refused, raised the question whether the failure of the latter to elect to contribute to the Workmen's Compensation Fund operated to deny it the protection of the common law defenses invoked by the special pleas. In effect plaintiff's two instructions informed the jury that if they believed from the evidence that at the time of the injury the defendant was engaged in both interstate and intrastate commerce, and that plaintiff was engaged in work affecting the latter only, and that such work was clearly separable and distinguishable from the defendant's interstate business, then as to the work in which plaintiff was engaged defendant was subject to the Workmen's Compensation Act, and not having availed itself of the provisions thereof, could not rely upon the common law defenses.

With respect to an employer engaged in both interstate and intrastate commerce, we have held that section 52 of the Workmen's Compensation Act, as it appears in Barnes' 1916 Code, chapter 15P,' applies the provisions of the act unconditionally only to those of his employees whose work is wholly intrastate and clearly separable and distinguishable from interstate commerce. *Suttle* v. *Hope Natural Gas Co.*, 82 W. Va. 729; *Roberts* v. *United Fuel Gas Co.*, 84 W. Va. 368, 99 S. E. 549. But where the work done within the state is so closely related to interstate commerce that it cannot clearly be distinguished and separated from it, the act is made to apply only conditionally, that is, when the employer and employees voluntarily accept its provisions by filing with the commissioner written acceptances approved by him; and where they have not so elected to submit to the act, the employer is not deprived of his common law defenses. *Barnett* v. *Coal & Coke Ry. Co.*, 81 W. Va. 251.

Was the work engaged in by plaintiff at the time of the injury clearly separable from the interstate portion of defendant's business, or were both so closely allied or related as to be inseparable? The gas line was an integral part of defendant's general and extensive pipe line system through which gas passed for indiscriminate interstate and intrastate use. It was already in existence and dedicated to the transportation of gas. Though not a main trunk line, yet it fed and supplied the latter with the article of commerce which both were designed to carry and then did carry, just as the least important spur and lateral railroad lines gather and concentrate the commodities they carry towards the main trunk lines for transportation to their ultimate destination. Plaintiff's work in locating the leak in the line had for its purpose and object the repair and improvement of existing interstate transportation facilities already devoted to the purposes intended to be served by them. The Suttle and Roberts cases, cited, are unlike this case in that neither of them relates to the transportation phase of the gas industry, but rather to the production and preliminary construction features. In the former, plaintiff's decedent was assisting in the erection of a derrick over a gas well preparatory to

88 W. Va.

cleaning it out. In the opinion the court said: "The production department of the gas industry is clearly separable from the transporting or marketing branch. All work in connection with the production of gas, that is, with bringing it to the surface where it may be confined and reduced to possession, is local in nature and clearly separable and distinguishable from the marketing or interstate portion of the industry." (p. 738). Similarly in the Roberts case, plaintiff was engaged at the time of his injury in excavating a ditch preparatory to laying a pipe line to be used in the interstate and intrastate transportation of gas, but not yet completed or put in use. Therefore the line was not yet stamped with the character of the commerce which it was to carry after completion. Work on it was merely preliminary to the transportation to which later it would be devoted, and hence was wholly intrastate. See also *McKee v. Ohio Valley Electric Ry. Co.,* 78 W. Va. 131.

But when the instrumentality has already been devoted to interstate commerce, and has assumed its place as a link in the chain of such transportation, employees engaged in repairing it or doing other work thereon generally are held to be engaged in work so closely allied to interstate commerce as not to be clearly separable from it. *Pederson* v. *Del., L. & W. R. Co.,* 229 U. S. 146; *Southern Ry. Co.* v. *Puckett,* 244 U. S. 571; *New York Cent. R. Co.* v. *Porter,* 249 U. S. 168; *Kinzell* v. *Chi., M. & St. P. Ry. Co.,* 250 U. S. 130; *So. Pac. Co.* v. *Ind. Acc. Com.,* 251 U. S. 259; *Erie R. Co.* v. *Collins,* 253 U. S. 77, 40 Sup. Ct. 450; *Erie R. Co. v. Szary,* 253 U. S. 86, 40 Sup. Ct. 454. In the Pedersen case, cited, it was  held that an employee carrying bolts to be used in repairing an interstate railroad was engaged in interstate commerce within the meaning of the federal Employers' Liability Act. The test there laid down and followed in subsequent cases is: "Was the work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it?" The court further said, at page 152: "True, a track or bridge may be used in both interstate and intrastate

commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce.'' The cases cited all relate to actions for injuries brought under the Federal Employers' Liability Act, but they are especially applicable here on the question whether plaintiff's work was clearly separable and distinguishable from interstate commerce, or so closely identified with it as to be part of it. For reasons already stated we are of opinion that it falls within the latter class, and therefore that defendant, not having elected to accept the provisions of the Workmen's Compensation Act as permitted by section 52, is not debarred from availing itself of the common law defenses. The act applies unconditionally only to such employment as is clearly separable from interstate commerce.

There is no dispute upon the facts relating to the character of defendant's business and the nature of plaintiff's employment, and therefore the question whether it was or was not so clearly identified with interstate commerce as to be part of it was one of law for the court and not one of fact for the jury. Hence plaintiff's instructions Nos. 1 and 2 were improperly given. The giving of similar instructions in the Roberts case, cited, was held to be harmless error because the jury there correctly decided the question of law, while here they have rendered an erroneous decision. For the same reasons defendant's instruction No. 2 should have been given.

Plaintiff's instruction No. 3 also is erroneous in telling the jury they are at liberty to consider the permanence of plaintiff's injury, and to include ''any losses that may occur in the future to the plaintiff'' which are proximate results of the alleged negligence. There was no serious attempt to prove permanent injury. Plaintiff and some witnesses testify to a slight deafness and loss of weight, but the evidence on that point is weak and inconclusive. The physician who attended him, introduced as a witness for defendant, did not regard his injury as serious or permanent, and it is signifi-

cant that plaintiff made no attempt to cross-examine him further than to ask two or three unimportant questions. Plaintiff resumed his work with defendant two weeks after the date of the accident and continued for more than a year in its employ, and now holds a still better position with another company as foreman in charge of its line repair work.

But there is more serious error in the case than we have yet discussed. We are of opinion that plaintiff has failed to establish any negligence on the part of the defendant. Even if the latter had been within the terms of the Workmen's Compensation Act, failure to comply with its provisions would not render defendant liable in the absence of negligence on its part which operated as the proximate cause of the injury. *Watts* v. *Ohio Valley Electric Ry. Co.,* 78 W. Va. 144; *Louis* v. *Smith-McCormick Construction Co.,* 80 W. Va. 159; *Wilkin* v. *H. Koppers Co.,* 84 W. Va. 460, 100 S. E. 300. There is no evidence that the pipe line was improperly constructed or maintained. On the other hand, defendant had constructed it only six months before the accident, and in its construction had used none but entirely new material, obtained from LaBelle Iron Works of Toledo, Ohio, the manufacturer, whose test showed a resistance sufficient to withstand a pressure of 1500 pounds for each square inch of surface. The superintendent who had charge of the work testifies to its proper construction, and no one contradicts him. The explosion did not occur at a coupling, but in the pipe itself, near a point where it was bent to conform to the curve of an embankment over which it ran. But there is nothing to show that the pipe was improperly strained in bending it, or that the work was done carelessly or negligently; indeed, the testimony is to the contrary. The declaration charges failure to shut off the gas pending the search for the leak, but that alone does not constitute negligence, because the usual and customary and perhaps the only way to locate a leak in one of several pipes forming parts of a pipe line system is by means of the escaping gas. Though tested to withstand a pressure of 1500 pounds, the line on the day of the accident did not carry more than 350 pounds,

and there is testimony to the effect that the pressure was even less than that.

In view of the positive testimony clearly disclosing the proper construction of the line out of new pipes so tested, its periodic inspection, the absence of any knowledge on defendant's part of a fatal defect likely to cause such an accident, and the failure of plaintiff to show by proof that it was due to some negligent act or omission to act on the part of defendant, there is nothing to support a finding of liability against it, and the mandatory instruction directing a verdict for defendant should have been given. Plaintiff was engaged in a dangerous work and well knew the risk and hazard attending it. Before he can recover for the injury he must show actionable negligence on the part of defendant. *McCreary* v. *C. & O. Ry. Co.*, 77 W. Va. 305. "In an action for tort, the plaintiff bearing the burden of proof, a verdict for him cannot be found on evidence which affords a mere conjecture that the liability exists, and leaves the minds of jurors in equipoise and reasonable doubt. The evidence must generate an actual, rational belief in the existence of the disputed fact." Point 1, Syl., *Moore* v. *Heat & Light Co.*, 65 W. Va. 552. When the employer has exercised reasonable care and diligence in providing a reasonably safe place within which his employees may perform the work assigned to them, he has fulfilled his duty to them in that regard. *Schilling* v. *H. Koppers Co.*, 83 W. Va. 737.

In so far as the action of the circuit court in overruling defendant's demurrer to the declaration and each of its three counts relates to the failure of defendant to comply with the Workmen's Compensation Act and the duty to remove or reduce the gas pressure on the line while it was being repaired, and to exercise a reasonable diligence to provide a reasonably safe place to work, what has been said is perhaps sufficient. The latter requirement, however, is not universal in its application but is subject to modification in some circumstances. It was part of plaintiff's business to repair leaks, and he was proficient in performing that service and had knowledge of its dangerous character. In effect

the work assigned to him was to make safe an unsafe portion of an interstate gas pipe line system, and while the rule referred. to is not without some degree of applicability, it does not apply to its fullest extent because the employee assumes the ordinary danger and risk incident to such employment. This is one of the exceptions to the general requirements for a safe place and safe instrumentalities. 3 Labatt's Master & Servant (2d Ed.) Sec. 924; note, 25 L. R. A. (N. S.) 321. See also *Miller* v. *Bertha Limestone Co.,* 70 W. Va. 643. In other respects the declaration seems unobjectionable.

For the reasons stated in this opinion, we reverse the judgment, set aside the verdict, and remand the case for retrial.

*Reversed and remanded.*