## Richmond.

SIMMONS AND WINCH v. McCONNELL.

FEBRUARY 13, 1890.

1. NEGLIGENT INJURIES—*Evidence—Damages.*—In action by husband for the negligent killing of his wife, evidence is admissible that after his marriage there was a marked change for the better in his habits and pecuniary condition, as affecting the *quantum* of damages.

2. IDEM—*Instructions—Case at bar.*—Where the killing of the wife was caused by a stone thrown by a blast fired in defendant's quarry, between 500 and 600 feet off, refusal to instruct that the defendants were entitled to continue to conduct their business in their usual manner if no accident had been previously caused thereby: *held,* not error.

3. PRACTICE AT COMMON LAW—*Objections to jurors.*—Where party had opportunity to question jurors before sworn, and raised no objections to their competency, the verdict will not be set aside on the ground that one of them was employed in the same shop with plaintiff but in a different department, and another's sons worked in the department of which plaintiff was foreman, unless it is apparent that the verdict was wrong in principle or the result of passion or prejudice.

4. IDEM—*Refusing to instruct as asked.*—It is not error to refuse to give an instruction asked for, if the court gives one embodying the same propositions of law as applied to the facts.

Error to judgment of hustings court of Roanoke City rendered at its December term, 1888, in an action of trespass on the case, wherein James A. McConnell, administrator of Rosa McConnell, deceased, was plaintiff, and James S. Simmons and William F. Winch (the plaintiffs in error) were defendants. Opinion states the case.

*G. W. & L. C. Hansbrough, Penn & Cocke,* and *Scott & Dupuy,* for the plaintiffs in error.

*Miller & Smith* and *Phlegar & Johnson*, for the defendants in error.

FAUNTLEROY, J., delivered the opinion of the court.

In the month of April, 1888, James S. Simmons and William F. Winch were the owners and operators of a rock quarry within the corporate limits of Roanoke City, which said quarry had been worked and owned by William Welch for some six years previous to his selling it to the said Simmons and Winch, some ten months previous to the 5th day of April, 1888, on which day a blast was fired at the said quarry, which threw a fragment of stone weighing some twenty-five pounds into the yard of the dwelling-house of a Mr. Obermeyer, between five hundred and six hundred feet from the said quarry, which struck and killed Mrs. Rosa McConnell, the wife of James A. McConnell, the appellee. The said James A. McConnell qualified as administrator of his deceased wife, and instituted this suit against the said James S. Simmons and William F. Winch for $10,000 damages. The jury found a verdict for the plaintiff for $6,000 damages, upon which verdict the hustings court entered judgment, to which this writ of error was allowed by one of the judges of this court.

The first error assigned in the petition of the plaintiff in error, as set forth in his bill of exceptions No. 1, is, that the plaintiff's counsel was permitted by the court to ask a witness, who had testified to his intimate knowledge of and acquaintance with McConnell and his wife in their daily life, to " state whether there had been any change in Mr. McConnell's habits and pecuniary condition after marriage; and, if so, what?" To which question the witness answered: " There was a very great change for the better in Mr. McConnell's habits and in his pecuniary affairs." Which said answer of the witness the court allowed to go to the jury as being admissible upon the *quantum* of damages.

We think the evidence was properly admitted, for the purpose and when it was admitted—after the plaintiff had introduced evidence tending to prove that the death of the plaintiff's intestate was caused by the defendant's wrongful default, in the careless, unskilful, and negligent management of their business as quarrymen, in making the blast. The deceased, thereby killed, was the wife of the plaintiff; and in the action for the wrong, causing her death, the jury could properly take into consideration all the circumstances which give character to the transaction. 2 Wait, 468, sec. 5. In *Matthews* v. *Warner's Adm'r*, 29 Gratt., 570, this court held that the jury was not tied down to mere pecuniary loss, but could give such damages as seemed to them to be fair and just. In the case of *B. & O. Railroad Company* v. *Wightman's Adm'r*, 29 Gratt., 431, Judge Staples says: "The statute is regarded by the courts as remedial in its character—as affording compensation for injuries unknown to the common law—and is to be liberally construed, to promote the objects the legislature manifestly had in view. And therefore it is the courts look to the relationship and dependent condition of the parties, the capacity and ability of the deceased, mental and physical, and indeed all the surrounding circumstances and situation of the family, to enable the jury properly to estimate the loss sustained, and to fix the measure of the damage."

In the case of the *B. & O. Railroad* v. *Noell's Adm'r*, 32 Gratt., 394, this court reaffirms and emphasises the case of *Matthews* v. *Warner's Adm'r*, and held that the "loss of the care, attention, and society" of the son, the "solace and comfort" afforded to his mother, and her "sorrow, suffering, and mental anguish" occasioned by his death, might all properly be considered by the jury in estimating such damages as seemed to them fair and just. If the character and conduct of the wife be such that her death will cause but little "sorrow, suffering, and mental anguish" to the husband, then the fair and just proportion of the damages to be awarded by the jury

will be measured accordingly; if, on the contrary, the wife be loving, tender, and dutiful to her husband, thrifty, industrious, economical, and prudent—as the evidence in this case proved Mrs. McConnell to be—then "her price is far above rubies," and the loss of such a wife, of such an helpmeet, of such influence, of such a blessed and potent ministry and companionship, is a proper element of damages to be considered by the jury in fixing the *solatium* to be awarded to the husband for tearing her from his heart and home! Even in those states where the jury is tied down to consider and allow only pecuniary damages, such evidence has been adjudged to be proper. In *Tilly* v. *H. R. R. R. Co.*, 29 New York, it was held in an action by a father as administrator of his wife, who had been killed by the negligence of the defendant, that it was not error for the court to charge the jury that, in estimating the pecuniary injury, they might take into consideration the nature and the physical, moral, and intellectual training which the wife and mother gave to the children. (See Shearman and Redfield on Law of Negligence, note p. 667.) And if, under the narrow and illiberal statute which confined the jury to the consideration of merely pecuniary damages, such evidence is admissible, surely under our statute, liberally construed, as this court has said it must be, the fact that the plaintiff (McConnell) was benefitted, morally and pecuniarily, by his married condition, is admissible evidence to show a loss or damage to him by the negligent killing of the faithful, prayerful, industrious, and thrifty wife of his bosom. The law furnishes no measure of damages other than the enlightened conscience of impartial jurors, guided by all the facts and circumstances of the particular case. 7 S. E. Reporter, 912.

The plaintiffs in error allege, as their second assignment of error, the refusal of the court to give the instructions which they asked, and in giving the instructions which the court did give instead thereof, as set forth in their second bill of exceptions. To recite these instructions, asked for by the defend-

ants, and refused or modified by the court to adapt them to
the evidence, would swell this opinion beyond all reasonable
length; suffice it to say that, after careful examination and
analysis, the court, while it did, in form, refuse to give the
instructions asked by the defendant, did give, in substance and
in the most favorable light for the defendants, their instruc-
tions numbered one, two, and three, and of this they cannot
complain. *N. & P. R. R.* v. *Ormsby*, 27 Gratt., 447; *Va. Mid-
land Railway* v. *White's Adm'r*, 5 S. E. R., 579, and cases there
cited; *Central Lunatic Asylum* v. *Flanagan*, 80 Va. (5 Hans-
brough), 116–17. And their fourth instruction, which was
refused, does not state the law, is misleading, and calculated to
confuse the jury, and was rightly refused by the, court. It
states, in effect, that, if in the ordinary and usual manner. in
which the business (of blasting) had been conducted by the
defendants, no accident or casualty had occurred, then the
defendants had a right to continue so to conduct their busi-
ness; and when the accident did occur, to say: We are guilty
of no negligence—this is our usual way of doing things. It
also instructs the jury, in effect, that the defendants were not
liable unless they, or their agents, knew that Mrs. McConnell
was or would be where she was when the particular blast was
fired; and that the hole was drilled and charged with powder,
and so directed and aimed that, when the blast was fired, it was
done for the purpose of throwing a twenty-five pound rock so
as to strike and kill Mrs. McConnell. The instructions which
were given to the jury by the court, in the stead of the instruc-
tions asked for by the defendants and those asked for by the
plaintiff, not only correctly propounded the law applicable to
the facts in evidence, but they submitted the case to the jury
in the strongest light for the defendants.

The first instruction embodies elementary principles. The
second, third, and fourth instructions are sustained by our own
decisions and by the text writers. 27 Gratt., 455; Thompson
on negligence, p. 113, sec. 13; Shearman and Redfield on Neg-

ligence, sec. 689; Cooley on Torts, 630. *Colton* v. *Onderdonk,* 69 California, 155, says that blasting on a lot contiguous to another is an unreasonable, unusual, and unnatural use of property, which no care or diligence can excuse from actual damages; and that the defendant was mistaken in supposing that, if he used care and skill, he had a right to do an act which was intrinsically dangerous, and would, necessarily, probably, or naturally, result in damages. A simple and inexpensive device, easily handled, and which had been previously used by Welch, their predecessor, would have saved Mrs. McConnell's life. All that defendants need to have done was to cover the blast with some timbers. The fifth and seventh instructions were favorable to the defendants, while the sixth is plainly unobjectionable.

The third assignment of error is, that the court refused to set aside the verdict and grant a new trial, because of misdirection as set forth in bills of exception Nos. 1 and 2. This, of course, falls with the first and second assignments, which, as we have seen, are not well taken. The fourth and last assignment of error is, that two of the jurors who tried the case were not competent. One of the jurors excepted to, after the verdict, was an employee in the Roanoke machine shops, which employ from 900 to 1,100 men; he was no relation whatever to the plaintiff, who was employed as foreman in a totally different department of the shops from the one in which the juror was engaged, and he was in no way subject to plaintiff's control. The other juror was in no way connected with the shops, or the concern. He was not connected with McConnell, nor, so far as it appears from this record, was he even cognizant of the fact that his sons were employed in McConnell's department of the vast concern. He was wholly independent of his said sons, and both the said jurors have sworn that they were influenced only by the law and the evidence given to them, and that they were in no sense or degree influenced by McConnell.

The defendants and their counsel obtained a list of the jurors who were to try the cause, and they consulted and deliberated as to demanding a special jury, and they were notified and requested by the court to interrogate the jurors before they were sworn; and yet they did not object until after verdict. After verdict they cannot have a new trial for this cause unless it appear that injustice has been done to them by admitting the disqualified juror. *Jones' case*, 1 Leigh, 598; *Bristow's case*, 15 Gratt., 646; *Hailstock's case*, 2 Gratt., 564; *Curran's case*, 7 Gratt., 622; *Poindexter's case*, 33 Gratt., 792. In *Beck* v. *Thompson* (W. Va.), 7 S. E. Reporter, 447, "a new trial will not be granted on account of the disqualification of a juror for matter that is a principal cause of challenge which existed before he was elected and sworn as such juror, but which was unknown to the party until after the trial, and which could not have been discovered by the exercise of ordinary diligence unless it appears from the whole case, made before the court on the motion for a new trial, that the party suffered injustice from the fact that such juror served in the trial of the case."

The plaintiffs in error have not only failed to show that they were injured by these jurors, but, in fact, they have failed, too, to show that the jurors were incompetent. It is nowhere claimed that the evidence does not support the verdict, and no motion was made to set aside the verdict on the ground that it is contrary to the evidence, or upon the ground that the damages are excessive. After a patient hearing of the evidence, and giving the law to the jury, and observing the witnesses and the jurors, the trial court was satisfied that a right verdict had been rendered, and that no injustice had been done to the defendants, and it refused to disturb the verdict. No court will disturb a verdict when there is evidence to support it, unless it be plainly wrong in principle, or evince partiality or prejudice, or corruption in the jury. We are of opinion to affirm the judgment of the hustings court of Roanoke city.

JUDGMENT AFFIRMED.