# CHARLESTON

MELTON *v.* CHESAPEAKE & OHIO RAILWAY CO.

Submitted March 19, 1912.    Decided February 4, 1913.

1. RAILROADS—*Accident of Crossing.*

A partial but substantial equipment by a railroad company of a portion of its track through a city, town or village in the manner usually adopted at public crossings, and as a convenient means of access to and from a nearby public highway, operates as an implied invitation to the public to so use such crossing; and, if so generally used by it that the company through its employes must be cognizant thereof, the company is thereby charged with the duty of exercising the same degree of care as the law imposes at a public crossing. (p. 703).

2. SAME.

Propelling a train of cars by an engine in 'mid-train, over such frequented crossing, on a dark night, without signal or warning or light on or about the forward car, is negligence, and if injury results, the operating company is liable therefor in damages to the person so injured, in the absence of negligence on his part contributory thereto. (p. 706).

3. NEGLIGENCE—*Contributory Negligence—Burden of Proof.*

Where plaintiff has shown negligence on the part of defendant, if the latter relies on contributory negligence of plaintiff to defeat recovery, the burden is on defendant to prove such negligence, unless it is disclosed by plaintiff's evidence or may be fairly inferred from all the circumstances; and, in the absence of such proof or inference, the person injured must be presumed to be without fault. (p. 706).

4. RAILROADS—*Accident at Crossing—Negligence.*

A case holding the railroad crossing at which the injury occurred to be of such public character as requires the operating company to exercise reasonable care to prevent injury, and the company liable in ·damages for injury caused by its negligence in that respect. (p. 703).

Error to Circuit Court, Kanawha County.

Action by J. J. Melton, Sheriff, against Chesapeake & Ohio Railway Company Verdict and judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Enslow, Fitzpatrick, Alderson & Baker,* for plaintiff in error.

*A. M. Belcher,* for defendant in error.

LYNCH, JUDGE:

This action was brought to recover damages for the negligent killing of Samuel Canterbury, plaintiff's intestate. A verdict and judgment in favor of the plaintiff were obtained in the circuit court. The case is now before us on writ of error. Three grounds of error are relied on in the defendant's brief: first, that improper testimony was allowed to go to the jury; second, that the jury was improperly instructed; third, "that upon the merits there should have been a verdict for the defendant".

Canterbury was killed in Marmet, a village of eight hundred

inhabitants. His mangled body was found on defendant's track, ten feet from a crossing, a short time after one of its freight trains had passed. Competent proof sufficiently attributes the cause of his death to a collision with defendant's train. This fact the defendant only formally denies.

The evidence of which the defendant complains relates to the character of the crossing. It is true, no highway established under the forms prescribed by law crossed the right of way at that point. But the proof shows a long-continued use of the place where the accident occurred as a crossing. The railroad runs through and divides the town. The residents of the village used the crossing from fifteen to twenty years, in all respects as if it were in fact a public crossing. True, a fence was maintained by the defendant along its track; but it also constructed and maintained a gateway through the fence to the crossing. A driveway extended from different parts of the village direct to the gateway. For years prior to and at the time of the accident, it had been and was adopted by the public and in constant use as a ready means of access to and from the county road. The defendant placed heavy planks on each side of the outside rails, filled up with ballast the space between the ties, and kept the crossing in repair. Canterbury was killed some time about seven o'clock in the evening. He left his brother at Well's store, located two hundred feet east of the crossing, about an hour before his death, and was last seen, immediately after he left the store, approaching the crossing, where he had arranged to meet his brother after going to the post office. The night was dark. No one saw the accident. The engine was mid-train. It carried a head-light, but other cars preceding the engine obstructed the light. His body was found between seven and eight o'clock. His toes, fragments of clothing, and blood-stains were found on the crossing. The proof is abundant to show that his death was caused by the defendant's train; and it is liable for the injury, provided the public character of the crossing was such as to require ordinary diligence and care by its agents in order to avoid injury to persons and property using it as a public crossing.

We think the evidence is affirmatively sufficient to support the finding of the jury, as virtually it did find, that the place of in-

jury was to the extent public that it became and was the duty of the defendant in the operation of its trains to exercise a reasonable degree of care and diligence for the safety of the persons using it as a crossing, and that it was negligence on the part of the defendant to approach the crossing in the manner we have stated, in darkness and without signal or warning of any kind. In *Bowles* v. *Railway Co.*, 61 W. Va. 272, it is said: "The precaution must suit the circumstances, and be adequate under the circumstances." Bowles was killed at a public crossing; but the defendant sought to avoid liability because he had approached the crossing by walking thereto on the track. This it urged was negligence on his part; but the Court decided otherwise.

In *Ray* v. *Railway Co.*, 57 W. Va. 333, 338, Judge BRANNON, quoting from Elliott on Railroads, says: "In order to impose upon the company the duty to treat a place as a public crossing, those who use the place as a crossing must either have a legal right to so use it, or must use it at the invitation of the company; and 'neither sufferance nor permission nor passive acquiescence is equivalent to an invitation'. If however, the traveler uses a place as a crossing by invitation of the company, it must use ordinary care to prevent injury to him, as where the company constructs a grade crossing and holds it out to the public as a suitable place to cross. Where by fencing off a foot-way over its tracks it induces the public to so use it, by building to the track plank bridges for foot passengers, or by constructing gates in the railroad fence for the use of pedestrians who habitually cross the track, it thereby holds out the place as proper for them to use. Such invitation as imposes on the company the duty of ordinary care is implied, where by some act or designation of the company persons are led to believe that a way was intended to be used by travelers or others having lawful occasion to go that way, and the company is under obligation to use ordinary care to keep it free from danger."

In *Railroad Co.* v. *Carver*, 88 Va. 63, it is held that if "the tracks where plaintiff's intestate was killed had long been used by the public with defendant's knowledge and acquiescence, then deceased was not on the track as a trespasser, but as a licensee". The same case is authority, if such be necessary, that

a railroad company running· its trains through a town must use greater care and diligence to prevent injury to persons and property than is required in less frequented localities or populous districts, and "the fact that pedestrians were accustomed to travel on the track at a particular place, in the knowledge of the company, made it its duty to use greater care in operating its road at that place." The opinion states that "the track of the railroad lies through the town, and from lots fronting on the railroad, the company had constructed plank bridges for foot passengers, leading from the lot to the track, over and across the usual ditch found there, as in other railroads; and there were three tracks—main, south and north—along in that part of the line; and between the two first named a good wide walkway had been constructed, upon·which persons might safely walk between moving trains. If these things are true, was not the public invited to walk there? and if so invited, were they trespassers? Clearly not." So, in *Railroad Co.* v. *Burge,* 84 Va. 63, it is said that a company running its trains on city streets must use greater care than in less frequented localities, and "it is required of them to resort to special precautions, depending upon the particular locality and the circumstances, to avoid accidents, and any neglect of such precautions as are proper under the peculiar surroundings and circumstances of the locality constitutes negligence."

Greater care and prudence is required of a railroad company in the operation of its road at places where pedestrians are accustomed to travel on or across its railroad at any particular place than is required at places where the tracks are not so used. A difference exists between the degree of care due from a railroad company under ordinary circumstances to a trespasser and licensee; yet if the company through its agents knows that its right of way at a certain point is constantly in use as a foot-way in a village, town or city, and that people pass over it daily and at all hours, the railroad company can not without fault proceed in a manner which must necessarily be dangerous to such persons, whether trespassers or licensees. 11 Encyc. Dig. 582, and cases cited.

The doctrine laid down in *Huff* v. *Railway Co.*, 48 W. Va. 45, does not militate against the views above expressed and

the authorities cited. In that case the accident occurred in defendant's yards and upon its switch tracks—a place to which persons resort at their peril, the company being liable to them only for reckless and wanton injury.

We think the character of this crossing was such as to require the defendant to use a higher degree of care than it did use on the night of the accident. No signals or warning, statutory or otherwise, were given of the approach of the train. There was no light at or near the front car, nor proof of any except the statement of the brakeman that he was walking on the ground with a lantern, but he did not see the deceased. None of the trainmen saw him, nor did they know he had been struck and killed until after the discovery of his body. We are of the opinion, therefore, that the evidence of which the defendant complains was proper, and that no error was committed in permitting it to go to the jury.

Nor do we think the jury was improperly instructed. The first instruction on the plaintiff's behalf is sufficiently disposed of by the discussion of the evidence relating to the character of the crossing. It was not limited to statutory warnings. It employed the word "warnings" in a general sense; and we think it was the duty of the defendant not only to exercise care and caution, but to exercise the further precaution of having a light at the front of the advancing car and to give some warning of its approach. In the language of the instruction, "the failure to give such signals or warnings was," in our view, "the proximate cause of the death" of decedent. The giving of the second instruction for plaintiff was also free from error. "Where the plaintiff has shown negligence on the part of the defendant, if the defendant relies on contributory negligence of the plaintiff, the burden is on the defendant to prove it, unless it is disclosed by the plaintiff's evidence, or may be fairly inferred from all the circumstances; and, in the absence of such proof, the person injured must be presumed to be without fault." *Railway Co.* v. *Bryant,* 95 Va. 212; *Kimball* v. *Friend,* 95 Va. 125; *Railroad Co.* v. *Gilman,* 88 Va. 239; *Beyel* v. *Railroad Co.,* 34 W. Va. 538, 545. The language of these cases is practically identical with that of the instruction itself.

Plaintiff's third instruction is supported by the case of *McVey*

*v. Railroad Co.*, 46 W. Va. 111.  Its propriety is also supported by Beach on Contributory Negligence 3182, where it is said that "where there is no evidence that the party injured stopped and listened the court will not presume he did not stop and adjudge him guilty of negligence, but will leave the question to the jury."  Also *McBride* v. *Railroad Co.*, 19 Ore. 64, 23 Pac. 814, holds that in the absence of evidence the presumption is that the traveler looked and listened.  To the same effect are *Railroad Co.* v. *Weber*, 18 Am. Rep. 407, cited in *Young* v. *Railroad Co.*, 44 W. Va. 218; *Railway Co.* v. *Bryant, supra; Same* v. *Hansbrough*, 107 Va. 733; *Railroad Co.* v. *Griffith*, 159 U. S. 603, 611; *Roberts* v. *Managers of Canal*, 177 Pa. 183. The proof in this case does not disclose any circumstances upon which this Court can impute to Canterbury any negligence, or, in other words, say that he did not look and listen for an approaching train before going upon the crossing where the injury occurred.  There is also absence of any evidence tending to show that he could have seen or heard the train if he had looked or listened.  True, Wells, says there were lights burning in his store, about two hundred feet east of the crossing in the direction of the moving train, and the brakeman that he was walking beside the train with lantern in hand; but the jury have virtually passed upon the question whether Canterbury could see the train by means of the light from the store or lantern.  One witness for the plaintiff says that while standing on the platform at the depot only a few feet from the track the train partially passed him before he observed it.

Defendant's instructions refused are either not warranted by the proof or incorrectly state the law.  The first instruction was mandatory, and was properly refused, because there was sufficient evidence to carry the case to the jury.  The impropriety of the fourth and fifth instructions sufficiently appears from previous discussion.  The ninth was defective in its conclusion—"the railroad company would not be liable for his death unless the jury find that the agents for defendant *did discover* him on track in time to have avoided accident."  It should have contained the qualification, "or by the exercise of reasonable diligence could have discovered him on the track in time to have avoided injury."  The authorities are in accord

in holding this qualification essential to the validity of such instruction.

We are unable to find error in the record, and therefore affirm the judgment.

*Affirmed.*