I. G. BLACK, *Administrator, etc.* v. PEERLESS ELITE LAUNDRY COMPANY

(No. 7507)

Submitted April 18, 1933. Decided April 25, 1933.

(Rehearing denied June 9, 1933)

*Fitzpatrick, Brown & Davis,* for plaintiff in error.
*Lilly & Lilly,* for defendant in error.

KENNA, JUDGE:

This writ of error was awarded to a judgment of the circuit court of Cabell County entered the 8th day of August, 1932, upon a previous verdict of a jury for $10,000.00 for death by wrongful act. The defendant's truck struck and killed Glen Giles Black, an infant, in Gallaher Street, in the City of Huntington, on the morning of August 31, 1931.

I. G. Black, the father, left his home in Gallaher Street, Huntington, in a Ford touring car at about nine o'clock on the morning of August 31, 1931. He was driving and seated beside him on the front seat was his son, Cecil Black, age 16. In the back seat on the left was Lloyd Black, age 18. Glen Giles Black, a few days less than four years and nine months old, was seated on the right of the back seat. The purpose of the trip was to take Lloyd to a doctor in town. They traveled north toward the Ohio river a distance of approximately 450 feet. Here they stopped on the east side of the street against the curb and opposite the Stewart store. Some of the testimony tends to show that the purpose of this

830

stop was to enable the father to get a check cashed at the Stewart store and to permit the little boy to buy candy there. It is stated that the purpose was then for the little boy to return home by himself, the others continuing into Huntington. Lloyd Black testified that Cecil was getting out of the front seat and getting into the back with him and that Glen got out and went around back of the car and into the street about seven feet from the curb, where he stopped. The width of the Black car was testified to as five and one-half feet. This put the child between one foot and eighteen inches beyond its outer edge. There is other testimony to the effect that he was but six feet from the curb. The width of the street is proven to have been nineteen and one-half feet. Either of these positions therefore would leave the child east of the middle of the street. The father testified that he had his hand on the door handle to his left preparing to get out; that he did not know the little boy had gotten out of the automobile; that he saw the approaching truck and looked around and saw the child standing apparently waiting for the truck to pass; that he was afraid to take a chance getting out because the truck was coming so fast; that he saw the boy standing in the street before the truck hit him and he saw the truck strike him; that the truck was traveling approximately 30 or 35 miles an hour. He says that it did not slow up as it passed his car, and that the Chevrolet truck, which was traveling south, when the brakes were applied made skid marks beginning about five feet south of his car and about six feet out from the curb on the side his car was parked, thus placing the truck almost exactly in the middle of the street. There were no cars on the street other than the Black car and the truck within a distance of several hundred feet. The vision was unobstructed. The testimony of Cecil Black was substantially the same. He says that he did not see his little brother at the time he was struck; that he knew he had gotten out of the back of the car and gone around behind it, and a second after they parked he saw the Chevrolet truck coming about 150 feet away. He estimates its speed at about 35 miles an hour. There is testimony to the effect that the skid marks made by the truck continued for a distance of approximately 75 feet and to the point that the truck stopped. On cross-examination, Black, the father,

denied giving the little boy money to buy candy, and he testified that he never thought of that in getting out; that when he heard the truck coming he looked back and saw the child when it was about 75 feet away; that he was afraid to hollo at him; that he was standing there waiting for the car to pass, and that he did not know he was going to the store.

For the defendant, W. A. Stout, who was the driver of the truck, testified that he had been driving about twelve years; that the brakes on the truck were extra good; that he noticed the Black car and at that time was coming along "in a subconscious way" and did not just look to see how many persons were in it; that he was traveling at the usual speed of between fifteen to eighteen miles an hour looking straight ahead; that he never did see the little boy until he knew he had struck something, after which he stopped as quicky as he could; that he did not know what he had struck; that he was not over six or eight feet beyond the point where he heard the thud when he stopped his truck; that he was looking straight ahead at the time he passed the Black car, and that nothing attracted his attention either to the left or right.

The plaintiff offered no instructions and apparently the defendant makes no complaint of instructions denied it.

In this state of the record, it is urged that the court below erred in denying the motion of the defendant to exclude the plaintiff's evidence; in overruling defendant's motion to set aside the verdict of the jury because (a) the verdict of the jury is contrary to the law and the evidence; (b) that both beneficiaries, that is, the mother and father, were guilty of contributory negligence; (c) that the testimony clearly shows that the father at least is guilty of contributory negligence barring recovery on his part, and (d) that the amount of the verdict, $10,000.00, for the death of the child between four and five years of age, evinces passion and prejudice on the part of the jury attributable to inflammatory argument of counsel.

We think under the proof of the case that the questions of both primary and contributory negligence were for the jury. Whether the little fellow would have been allowed to get into the street at all by a father exercising reasonable care for his safety might be doubted. At the same time, the testimony of the father is to the effect that he did not know the child was

out of the automobile until he realized its presence in the street with the truck coming between 30 and 35 miles an hour and approximately 75 feet away. He says that at that time he supposed the child was standing in the position he was awaiting the truck's passing; that he was affraid to hollo at him, evidently on the theory that to do so might confuse the child and imperil it further. The jury evidently believed this testimony and believed further that it was a reasonable explanation of the father's conduct. We cannot now say that it was not.

As to the excessiveness of the verdict based upon the remarks of counsel, but one remark of counsel was objected to, the language being: "I want to say in this court as I state in other courts I practice in, it is a shame and a disgrace to the State of West Virginia that you cannot recover more than the limit of $10,000.00 as the value of a human life. That is the statute that came from Virginia when we became a State. It was changed by the Legislature once to twenty-five thousand dollars." Upon objection being made to this remark of counsel, the trial court promptly admonished the jury to disregard it. A further remark objected to here is the following in the closing argument of counsel for plaintiff: "Why, the Lindbergh baby was worth fifty thousand dollars to his father and mother. It was worth possibly one million dollars. They have spent even a greater sum than one hundred thousand dollars, trying to get the baby back to his mother and father. Black is just an ordinary railroad man but in whose heart there is the greatest love for his baby, and in the father's heart of hearts and in the mother's heart of hearts that child certainly has a value of the Lindbergh's baby, or a King's baby, or a Potentate's baby." This court will not regard alleged improper argument of counsel as a ground of error unless it appears that the complaining party asked for and was refused an instruction to the jury to disregard the improper remark. *McCullough* v. *Clark*, 88 W. Va. 22, 106 S. E. 61 point 6, Syllabus. In considering this assignment of error, therefore, we are restricted to the remark concerning the limitation of ten thousand dollars for recovery in death by wrongful act cases in West Virginia. This was objected to, and the court admonished the jury to disregard it. "Improper remarks by counsel during trial and in the presence of the jury are

not cause for reversal, if the jury were properly instructed to disregard them, and the court is unable to see that substantial prejudice resulted." *Roberts* v. *United Fuel Gas Co.*, 84 W. Va. 368, 99 S. E. 549; *Moorefield* v. *Lewis*, 96 W. Va. 112, 116, 123 S. E. 564.

In determining the question of whether the remarks of counsel in the case before us resulted in a prejudicially excessive verdict, the basis of consideration, quite naturally, is the element of damage upon which that verdict was based. In the case of *Wigal* v. *City of Parkersburg*, 74 W. Va. 25, 81 S. E. 554, pt. 6, Syllabus, this court laid down the following doctrine: "In an action to recover for wrongful death, the jury are not limited to mere pecuniary damages, but may allow for mental anguish and suffering of near relatives of deceased, who are his distributees." This doctrine had been established in this state prior to that decision. It has also been approved since. *Morris* v. *Railroad Co.*, 107 W. Va. 97, 108, 147 S. E. 547. Furthermore, this court has repeatedly approved the doctrine that the verdict of a jury in a death by wrongful act case will not be set aside for excessiveness "unless the verdict be the result of passion, prejudice, partiality or corruption on the part of the jury". *Thomas* v. *Electrical Co.*, 54 W. Va. 395, 46 S. E. 217, Pt. 10, Syllabus.

In view of these decisions, and considering the fact that the jury was admonished to disregard the remarks of counsel pointed out by defendant as improper, we cannot say that by reason of those remarks, or because of anything else occurring in the trial of the case, the verdict of the jury is excessive.

For the reasons stated, we are of opinion that there is no reversible error in the case, and the judgment is therefore affirmed.

*Affirmed.*